FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ JUN 17 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x

KATHY-ANN VAUGHN, et al.,

                Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

                Defendants.

-------------------------------------------------x

MEMORANDUM AND ORDER
06-CV-6547 (ILG)

GLASSER, United States Senior District Judge:

**INTRODUCTION & PROCEDURAL HISTORY**

Plaintiffs Kathy-Ann Vaughn ("Vaughn"), Angela Cammarata ("Cammarata"), Christelene Henry ("Henry") and Emily Francis ("Francis") are or were employed by the New York City Department of Education ("DOE") and assigned to Science Skills Center High School ("SSCHS"). (Dkt. No. 64. at p.1.) Plaintiff Carol Davis ("Davis") was formerly employed by the DOE as a probationary teacher assigned to SSCHS. (Id.) Together they brought suit against the City of New York, the New York City Department of Education and former supervisors, Principal Denise Jennings and Assistant Principle ("AP") Michelle Williams in their individual capacities, (together, "Defendants"), alleging that they were discriminated and retaliated against on account of their Caribbean origin.

The Court previously granted the Defendants' motion for summary judgment as to Plaintiffs' Title VII, 42 U.S.C. § 1981 and § 1983 equal protection claims. However, the Court did not rule on Plaintiff Vaughn's retaliation claim for reasons discussed below. See Vaughn v. City of New York, 2010 WL 2076926 (May 24, 2010 E.D.N.Y.) Additionally, for reasons stated

1

in that opinion, id. at *1, the Court also declined to rule on Plaintiffs' 42 U.S.C. § 1983 due process claims. (Compl. at ¶ 26.) Subsequently, however, the Court gave the Defendants permission to file a supplemental summary judgment motion on those discrete issues. (Dkt. Nos. 55, 60.) Before this Court is that motion, and for the following reasons, it is granted.

## STANDARDS

### a. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when the moving party has met its burden in demonstrating that the record contains "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007) (internal quotations omitted). If the moving party meets its burden, then the opposing party must come forward with specific facts showing that there is a genuine issue for trial. The opposing party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). If the court determines that there is a genuine dispute as to a material fact, the court then must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotations and citation omitted).

2

### b. Due Process Standard

The Due Process Clause of the Fourteenth Amendment of the United States Constitution imposes procedural safeguards against governmental decisions that deprive individuals of liberty or property. A procedural due process analysis entails a two step inquiry: 1) whether a Plaintiff "possesses a liberty or property interest within the meaning of the due process clause; and, if so, 2) whether existing state procedures are constitutionally adequate." Ford Motor Credit Co. v. NYC Police Dept., 503 F.3d 186, 190 (2d Cir. 2007).

It is well established that the teachers disciplinary procedures outlined in Education Law § 3020-a provide "more than adequate procedural safeguards to satisfy the plaintiff's due process rights under the Fourteenth Amendment." Montefusco v. Nassau County, 39 F.Supp.2d 231, 239-40 (E.D.N.Y. 1999) (quoting Sullivan v. Bd. of Educ., 131 A.D.2d 836, 838 (2d Dep't 1987)); Adams v. New York State Educ. Dept., 2010 WL 624020 *31 (Feb. 23, 2010 S.D.N.Y.). Section 3020(4)(a) authorizes the DOE and the United Federation of Teachers ("UFT") to enter into a collective bargaining agreement modifying the procedures set forth in § 3020-a as long as that modification ensures that tenured teachers are not "disciplined or removed during a term of employment except for just cause." Accordingly, Article 21 of the Collective Bargaining Agreement between the DOE and UFT is modeled on § 3020-a and outlines procedural mechanisms for teacher disciplinary proceedings which are in relevant part:

1. No material derogatory to a teacher's conduct, service, character or personality shall be placed in the files unless the teacher has had the opportunity to read the material. . . .
4. The teacher shall be permitted to reproduce any material in his/her file.
5. Members may not grieve material in file. However, the teacher shall have the right to append a response to any letter. If disciplinary charges do not follow, the letter and response shall be removed from the file three years from the date the original material is placed in the file. . . .

3

(Dkt. Nos. 64, 75.)

## DISCUSSION

### I. Due Process Claims

Plaintiffs assert that having no notice of letters being placed in their personnel files, they had no opportunity to be heard and to refute the false allegations they contend were contained within them. Being deprived of notice and an opportunity to be heard, they claim, violated the Due Process Clause of the Fourteenth Amendment.

#### a. Angela Cammarata

Cammarata received an unsatisfactory rating for her Annual Professional Performance Review and Report for the 2004-2005 and 2005-2006 school years. (Dkt. Nos. 36, 42 at ¶¶ 169, 189.) In April 2007, Cammarata was served with allegations that she rendered incompetent and inefficient services and engaged in conduct unbecoming her position during those years. (Id. at ¶ 193.) In May 2007, Cammarata was suspended with pay at SSCHS and was reassigned to a 'reassignment center' pending the resolution of those allegations. In a September 2009 decision by a hearing officer, Cammarata was found guilty of some of those charges and fined. (Dkt. No. 62-5.)

Cammarata had the opportunity to be heard and defend herself against the 2007 charges brought against her. There is nothing in the record to suggest that when the hearing officer found Cammarata guilty he was not in full compliance with Education Law §3020-a and the Collective Bargaining Agreement. Cammarata's speculation that failure to disclose a contact log authored by Assistant Principal Williams would have had a bearing on the outcome of the 2009 decision is belied by the record. The contact log merely summarizes many incidents which are described

4

elsewhere in the record and which independently justified bringing formal charges against Cammarata. Cammarata's contention that the contact log was a cause of the decision to bring formal charges against her is therefore plainly speculative and without merit. Cammarata "cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

Cammarata also claims that the Defendants placed a derogatory letter or letters in her personnel file without her knowledge, thus violating her due process rights. (Compl. at ¶ 26). Cammarata, however, offers no evidence to support or even suggest a basis for this allegation. As Cammarata has proffered no evidence from which a genuine issue of material fact can be inferred, the Defendants' motion for summary judgment on her due process claims are granted.

### b. Kathy-Ann Vaughn, Christine Henry & Emily Francis

Plaintiffs Vaughn, Henry and Francis were given unsatisfactory ratings in their Annual Professional Performance Review and Report for the 2006-2007 school years. (Dkt. Nos. 36, 42 at ¶ 122.; Dkt. No. 77, "Ex. 211," Francis Decl. at ¶ 3.) Plaintiffs allege that during the course of this litigation they learned that disparaging letters were placed in their personnel files without their knowledge and in violation of their due process rights. (Dkt. No 77 at "Ex. 210," Henry Decl. ¶ 4.; Francis Decl. at ¶ 9.) Plaintiffs believe that these letters influenced the decisions to give them unsatisfactory performance ratings. Had they been aware of these letters, Plaintiffs argue, they would have successfully protested them, thus preventing the chain of events which led to their unsatisfactory rating and its consequences. (See id.)

i. Francis

Francis points to three incidents where she claims letters were placed in her file without notice. The three incidents involve: (1) a November 5, 2004 letter sent to Principal Denise Jennings and AP Caesar by AP Michele Williams alleging that Francis interfered with the performance of Williams' supervisory duties; (2) two letters to Francis from Principal Denise Jennings, both dated May 5, 2005; and (3) a letter from AP Colette Caesar ("Caesar") to Francis dated May 5, 2006.

The November 5, 2004 letter outlines an incident involving AP Williams, Francis and Kathy-Ann Vaughn. The letter states that AP Williams visited Vaughn's classroom for administrative purposes while her class was in session. While AP Williams waited for an appropriate opportunity to speak with Vaughn, Francis also came to Vaughn's classroom for reasons not stated in the letter and improperly interfered with the discharge of Williams' supervisory responsibilities.[1] (Dkt. No. 77, "Exs. 205.")

---

[1] During a deposition on January 23, 2009, (see Dkt. No. 79. "Ex. O," Tr. at p. 40.), Francis was asked why she went to see Vaughn:

| Questioner: | You went to see a teacher to do what? |
| --- | --- |
| Francis: | To say something to the teacher. |

(Continued on p. 40.)

| Questioner: | You went to see the teacher as part of your union duties or simply as a visit to say hello or something like that? |
| --- | --- |
| Francis: | Partially. What related to the job [sic]. It was an issue related to the job. |
| Questioner: | Do you remember what the issue was?... |
| Francis: | I don't remember specifically the issue. |

Francis' claim that she never saw the November 5, 2004 letter is belied by the record. (Id. at ¶ 211.) During her deposition on January 23, 2008, Francis pointed to the November 5, 2004 letter as an example of the harassment she claimed was caused by AP Williams. (Dkt. No. 79-2, "Ex. O," Tr. at pp. 39, 40, 50, 64.) Francis stated there that: "She [AP Williams] wrote me. She wrote some letter reporting. She wrote a letter regarding to this [sic] visit I made to see the teacher [Vaughn]." (Id. at p. 40.) Francis was then shown a copy of the November 4, 2004 letter, which resulted in the following colloquy:

| | |
|---|---|
| Questioner: | Was this the incident you're talking about that Ms. Williams wrote up? |
| Francis: | (Witness peruses document.) Yes. |
| Questioner: | Do you know if you wrote anything in response to this? |
| Francis: | (No response.) |
| Francis: | I don't remember. Probably I did. |
| Francis: | Probably I did. I cannot remember right now. |

Her deposition testimony clearly establishes that she was aware of the November 5th letter and that she could have grieved it if she wished. Accordingly, Francis' new allegation that she was denied due process as regards that letter is without merit. See Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987).

The two letters dated May 5, 2005 are identical except that the first letter asserts that Francis was absent for seven days while the second letter asserts she was absent for eleven. (Dkt. No. 44-5, "Exs. 92-97.") Both letters are signed by Jennings and indicate that they are to be placed in Francis' file. Both letters provide space below Jennings's signature for Francis to acknowledge that she "read and received" the letter and that she was aware that a copy of it would be placed in her personnel file. (Id.)

7

The first letter is acknowledged by Francis and is dated May 26, 2005. The same day, Francis filed a grievance claiming that the first May 5, 2005 letter was inaccurate and without basis. (See id. at Ex. 96.; see also Dkt. No. 77, "Ex. 211" at ¶ 5.) The first letter was then removed from Francis's file. (See Dkt. No 77, "Ex. 211" at ¶ 5.) In a letter dated June 3, 2005, Jennings wrote to Francis referencing the May 5th attendance letter which Francis grieved on May 26, 2005. (Dkt. No. 44-5, "Ex. 96.") That letter concluded: "Today, Friday, June 3, 2005, at 9:37 am, Ms. Parker reissued to you the same letter with the corrected dates for your attendance." This reissued letter, dated May 5th, 2005, does not contain Francis's signature but a handwritten note at the bottom of it which reads "Received June 3, 2005." (Id. at Ex. 93.) Francis does not deny receiving that June 3rd letter which plainly informs her that the May 5th letter with which she was familiar and grieved was received as corrected. A failure to notify claim in that context is frivolous.

Francis claims that the Defendants played a "sleight of hand by leaving a [second and] different May 5, 2005" disciplinary letter in her personnel file of which she was unaware and which she consequently never challenged. (Dkt. No. 77., "Ex. 211", Francis Decl. at ¶ 6.) However, that Francis received the reissued May 5th, 2005 letter is evidenced by a Step I grievance dated June 3rd 2005, making specific reference to it. (Dkt. No. 44-5, "Ex. 97.") Her claim that she lacked notice of that letter is patently false. She was not deprived of due process. She had notice of the May 5th attendance letters and grieved them both. It is important to note that there is no basis for the claim that she was deprived of even an hour's pay, and thus suffered no deprivation of a property interest and that no discernable or conceivable liberty interest was implicated. Francis's claim, (Dkt. No. 77, "Ex. 211" at ¶ 6.), is belied by the record and raises

no genuine material issue of fact precluding summary judgment for the Defendant's on this issue. See Mack, 814 F.2d at 124.

The May 5, 2006 letter contains a summary of an April 26, 2006 meeting in which Caesar, Francis and her UFT representative were present. (See Dkt. No. 77, "Ex. 206.") The letter outlines what AP Caesar believes to be a pattern of absences and early departures from work. (Id.) Francis claims that she never saw the letter. (Dkt. No. 77, "Ex. 211," at ¶ 4.) Francis speculates that this letter may have influenced the decision to give her an unsatisfactory rating which ultimately prevented her from obtaining summer school positions, per-session assignments and from eventually attaining a supervisory role. (Id.) However, the record indicates that the May 5, 2006 letter is actually a draft of a May 10, 2006 letter and the two letters are identical in all respects. (See Dkt. No. 80, at "Ex. TTTT"; Dkt. No. 77, "Ex. 206"; Dkt. Nos. 36, 42 at ¶ 141.) Francis acknowledged receipt of the May 10, 2006 letter on May 12, 2006 and even submitted a number of attachments to it in rebuttal of its contents. (Dkt. No. 80, at "Ex. TTTT.") Accordingly, Francis's claim that she never saw the May 5, 2006 letter and that she was prejudiced by it is also plainly false.

ii. Vaughn and Henry

Vaughn and Henry have provided no evidence in support of their due process allegations. There is no factual description as to when, where, how and what letters or memoranda were inappropriately placed in their files, nor have any specific exhibits been submitted which might allow the court to consider the validity of their allegations.

Accordingly, Defendants' motion for summary judgment is granted as to the due process claims of Francis, Vaughn and Henry.

II. <u>Kathy-Ann Vaughn's Retaliation Claim</u>

As detailed in this Court's May 24, 2010 decision, Plaintiff Vaughn, a mathematics teacher, participated in a June 2005 demonstration against alleged discriminatory practices at SSCHS. <u>Vaughn v. City of New York</u>, 2010 WL 2076926 at *24 (May 24, 2010 E.D.N.Y.). Following the demonstration, Vaughn was reassigned to a different classroom which was situated opposite the office of AP Williams. "Vaughn has alleged that her classroom was reassigned for the purpose of placing her under the direct and constant scrutiny of Williams and that this reassignment marked the beginning of a series of acts of retaliatory harassment." <u>Id.</u> at *27.

To establish a prima facie case of retaliation under Title VII or § 1981, the plaintiff must establish: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 282-83 (2d Cir. 2001). Here, the Court previously determined that Vaughn (1) participated in a protected activity; that the (2) Defendants knew of that activity; that (3) a close temporal connection exists between the demonstration and the alleged retaliatory reassignment of Vaughn enough to satisfy the causal connection prong. The Court declined to rule on the adverse employment action allegation. <u>Vaughn v. City of New York</u>, 2010 WL 2076926 at *24-28 (May 24, 2010 E.D.N.Y.). The Court reasoned that:

> Even if defendants have not met their burden of demonstrating that Vaughn cannot satisfy the *de minimis* burden required for a *prima facie* case of retaliation, they could yet prevail if they can show legitimate business reasons for their allegedly retaliatory actions that Vaughn is unable to rebut. Defendants have in fact created a voluminous record, providing explanations for many of the actions Vaughn characterizes as retaliatory. <u>Nowhere in this record, however, have defendants provided an explanation for the reassignment of Vaughn's classroom</u>....[and] thus, they have not met their burden and are not entitled to summary judgment on Vaughn's Title VII retaliation claim.

10

Id. at *27-28 (internal citations omitted) (emphasis mine). Accordingly, the discrete issue the Defendants were permitted to address in this supplemental summary judgment motion is whether they can establish that they had a non-retaliatory reason for Vaughn's reassignment to a classroom directly across from Assistant Principal Williams' office.

Vaughn has alleged that her reassignment for the 2005-2006 school year to that classroom was the first of many retaliatory actions against her and was done for the purpose of placing her under the direct and constant scrutiny of Williams. The proximity of Vaughn's classroom to Williams' office, and William's presumed ability to observe her is the "direct and constant scrutiny" which she claims. This Court previously observed, "if [this] is true, [it] would [likely] be enough to amount to an adverse employment action." Vaughn v. City of New York, 2010 WL 2076926 at *27 (May 24, 2010 E.D.N.Y.) I would now question the validity of that observation but for the reasons that follow need not do so. The Defendants have provided convincing non-discriminatory and non-retaliatory reasons for Vaughn being reassigned to teach in a different classroom. (Dkt. No. 62-13, "Ex. M.," Williams Decl.) The record establishes that Vaughn was one of many teachers, including those in her own department, who were reassigned to different classrooms during the 2005-2006 school year for reasons of administrative efficiency. (Id. at ¶¶ 10, 11, 13.) The record reveals that the administration wanted teachers to avoid spending time traveling to different classrooms on different floors at the conclusion of each period. (Dkt. No. 62-13, "Ex. M.", Williams Decl. at ¶¶ 5, 7.) The school also wished to place all math and science classes on the second and fourth floors next to the science labs on those floors. The school was successful in achieving this goal for all but one teacher. (Id. at ¶¶ 10, 11, 13.) Vaughn's assertion that she was singled out for classroom reassignment in

11

retaliation for some imagined discriminatory reasons is purely speculative and that she was under "constant scrutiny" by Williams is simply an ipse dixit.

As the Defendants have provided a non-retaliatory reason for its employment decision, the burden shifts to the Plaintiff to show that the Defendant's proffered explanation is pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Kaytor v. Elec. Boat Corp., 609 F.3d 537, 553 (2d. Cir. 2010). Vaughn has not satisfied that burden. Her dissatisfaction with being assigned to a classroom opposite the assistant principal's office does not rise to the level of an adverse employment action. The implied, if not explicit assertion by Vaughn, an employee, that she has a legally cognizable right to be free from being observed as to the performance of her work by her supervisor is a remarkable one and clearly cannot be the law. Vaughn's preference for the location of her former classroom does not make her assignment to another an adverse employment action. Vaughn has failed to provide any evidence of retaliatory intent and utterly failed to establish that the reasons for her classroom reassignment were pretextual.

## CONCLUSION

For the aforementioned reasons, the Defendants' motion for summary judgment is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
June 16, 2011

s/I. Leo Glasser

I. Leo Glasser
United States Senior District Judge

12